The first case is Knepper v. Rite Aid, and also Fisher v. Rite Aid. We understand the same issues are involved here. We are ready to proceed. Mr. Winterberg. Good morning. May it please the Court. My name is Pete Limegrave, and I represent the appellants in these cases and consolidate their argument. The appellants in this case are amongst about 1,100 individuals who joined a nationwide Fair Labor Standards Act collective action lawsuit that's pending in the Middle District before Judge Jones. And you want to go ahead with the Rule 23 Act? Oh, I apologize. Yes, would you like a vote? I would, and I apologize. I would like three minutes of a vote. Okay, good. And they both also, shortly after opting into the Fair Labor Standards Act case, commenced their own Rule 23 state law process. We're aware of that. Tell us why you can do that and why there's no incompatibility, as Judge Jones said. Your Honor, the main reason that there's no incompatibility is based upon the statutory language of the FLSA's collective action provision. That provision is codified at Section 216B. And if you look at the language of that statute, what we see, Your Honor, is that Congress, by the plain language of the statute, specifically limited the scope and reach of Section 216B to Fair Labor Standards Act. Let me take you back one step, if I may, and it's at least a matter of curiosity for me. What is the provenance of the doctrine of inherent incompatibility? From whence does it come? Because I can't find any textual source for it. There's no question that it's out there. There's no question that other courts and other judges besides Judge Jones have embraced it. But while it seems doctrinally to me to sound in preclusion principles, I don't know where it comes from. As Chief Judge Amon of the Eastern District of New York noted, it doesn't have any jurisprudential basis. Having done a lot of FLSA collective and class actions, I can tell the Court that many attorneys and, I think, judges, have overread the de essentio supplemental jurisdiction decision authored by Judge Sirica and have gone way beyond the scope of that case. I think it has a little bit of its genesis in an incorrect reading of de essentio. But de essentio is extremely distinguishable because that's a supplemental jurisdiction. That's when claims were brought in the same case. Here, in fact, I'm surprised that you said the key issue is the language of the FLSA. I would think the key issue is that there is a jurisdictional basis for the bringing of this action. And how can we say, as in preclusion, and I'm making an argument for you, preclusion or preemption principles, as Judge Smith says, that we decline to exercise jurisdiction. And one of the reasons I wanted to start out with the procedural history, Your Honor, is because I wanted to emphasize to the Court that the jurisdictional basis of this is Section 1332. And as Your Honor noted recently in the Landsman and Funk case, Section 1332 is not a discretionary jurisdictional doctrine in the same way that 1367 is. Section 1332 says the Court shall have jurisdiction. And as Your Honor noted in Landsman and Funk, absent a clear and definitive congressional mandate, a federal court is required to hear a case that comes to it under Section 1332. And certainly, whereas here, the statute itself, Section 216B, is explicitly limited to Fair Labor Standards Act claims, we can't possibly have the clear and definitive congressional mandate that's required to justify a district court not hearing a diversity of citizenship case. Well, let me ask Judge Smith's question another way. Is there a Supreme Court case, and I'll ask your colleague the same thing, is there a Supreme Court case, or indeed a circuit court case, that says that this action should be barred based upon inherent incompatibility? No, there is not. Inherent incompatibility has no jurisprudential basis. It's not based in preemption doctrine. As a matter of fact, in one of the two underlying cases, the Knepper case, Judge Jones found that there was no preemption. It's not based in de essentio, because as Your Honor has observed, de essentio is a supplemental jurisdiction case that, in addition, even within the world of supplemental jurisdiction cases, does an extremely fact-intensive analysis. It's not based in anything. What it really appears to be based in is judges saying, this is too confusing. It really does. Defense counsel in these cases basically emphasize how confusing it's going to be. That doesn't give us a lot of credit, does it? Well, I don't think it does either, because we all know that federal judges deal with far more confusing matters than this. And as Judge Wood said in the Irvin case, this really isn't that confusing. Well, what does happen in these cases? You have the FLSA case proceeding in one federal district. You have a Rule 23 class action in another district with presumably the same remedies. What happens? Do they ultimately hope they all get settled together, or how does it work? Sometimes, and Your Honor will be interested in this, because I think you said on the MDL panel, they go to the MDL panel, and they all get put together. Because the Third Circuit has now become the land of inherent incompatibility, unlike any other jurisdiction in the United States, don't be surprised to see defense counsel trying to get their cases transferred to Delaware, New Jersey, or Pennsylvania. As a matter of fact, in this litigation, there's a case that was filed by one of the FLSA opt-ins in Washington alleging violations of the Washington overtime statute. And Rite Aid has worked extremely hard and successfully to get that case transferred to Judge Jones, pursuant to Section 1404. Why? So they can file a motion with Judge Jones saying it's inherently incompatible. Hopefully, we on the MDL will see through that maneuver. We'll give you more time here. And so eventually, if we have these two parallel cases, one, the statutory claim would involve an opt-in procedure, and Rule 23 would obviously be an opt-out procedure. And it's your view that there's nothing, assuming there is such a thing as an incompatibility doctrine, that there's nothing that would prevent these two suits from going forward. Right. And not even a di essenzio analysis, which would be a possibility in the supplemental jurisdiction scenario. Should we revisit di essenzio in this? I think that what the court needs to do, if it wants to clean up confusion, Your Honor, is very similar to what the second, seventh, and D.C. circuits have done. Lang, I'm sorry, Lindsay, Irving, and Scherer, they all have excellent descriptions of di essenzio where they explain that di essenzio number one is limited to supplemental jurisdiction analysis, and number two is highly fact-intensive and really seems to require that there be some discovery before the court can do a proper 1367 analysis. I do think that if the Third Circuit were to say the same thing, even though we're not in a supplemental jurisdiction case here, I do think it would benefit the bar and the judiciary for this panel to reiterate the very fact-specific nature of di essenzio and the fact that it is limited to supplemental jurisdiction. And it is fair to say, is it not, that none of those other circuit decisions criticized di essenzio in any way? They simply distinguished it and limited it to its application. Sure, they explain. There's been three circuit court decisions, Your Honor, that have addressed 1367 supplemental jurisdiction over state law claims that are not entailed under federal claims. Those are di essenzio, Lindsay, and Irving, and Irving. And Wang? No, Wang was preempted. But anyway, all three of those cases say this isn't inconsistent with di essenzio in any way. Di essenzio just came out to a different result after running through the 1367 analysis. One of the irons here is Wright 8 emphasizes that the substantive provisions of the state law statutes and the FLSA are similar. But under a di essenzio analysis, that actually would weigh in favor of the federal court considering both claims. It doesn't matter here because we're not in the world of supplemental jurisdiction. Okay. Now, you said something about discovery being necessary. Is it as much discovery or a more searching analysis of what's really before the court? Discovery, I think, again, Your Honor, because we're not in the supplemental jurisdiction arena, it doesn't matter how much discovery there is. There is no basis for the district court to not exercise jurisdiction over appellant's claims. When I expressed my view that discovery is necessary, I'm really talking about the realm of the supplemental jurisdiction case. I don't believe a court can confidently go through the kind of thorough analysis that Judge Sirico went through in di essenzio in the absence of some discovery. All right. Thank you. So as part of this, you are asking us to inter the inherent incompatibility doctrine, at least in the FLMI, Fair Labor Standards Act context? Yes. And one of the reasons, Your Honor, that we ask this is because of this case. But I will tell the court, because I do a lot of that public-safety litigation, as does Mr. Letzer, my co-counselor. We're operating in a situation in the Third Circuit where if a defendant, as some defendants do, wants to do a Rule 23 settlement in order to get releases from the entire class, nobody cares about inherent incompatibility. In cases like this that are hotly litigated, it's all about inherent incompatibility. We're dealing with a situation where this is a doctrine that, because it has no jurisprudential basis, has really become a doctrine of convenience for parties and for the court, where sometimes it's involved and sometimes it is not. And appellants would submit that that kind of environment is not healthy. And going to Your Honor's point, maybe it does justify this court stepping outside of Catholic jurisdiction a little bit and bringing up the essential. All right. Any other questions? Good. Thank you very much. Ms. Moskowitz. Ms. Moskowitz. Good morning. Good morning. May I please report? My name is Laura Moskowitz, appearing on behalf of the Secretary of Labor. As the court has already discussed this morning, the cases that are before the court in these consolidated appeals are situations in which the district court used this mistaken logic before the inherent incompatibility theory, misinterpreting the intent of the often provisioned section 16b of the Federal Standards Act to find it incompatible with, or to somehow preclude, opt-out state wage law class actions. The text, History and Purpose of Section 16b made clear that Section 16b is not incompatible with and does not bar Bill 23 opt-out state wage law class actions. Whether they're brought separately, as they were in the cases before the court today, or together in a dual or combined action, as in the recent second and third circuit decisions, which held that Section 16b is not incompatible and does not bar opt-out state wage law class actions. If we were to find that inherent incompatibility doesn't apply to separate cases, such as we have here, not a supplemental jurisdiction, we might not need to actually reach the issue of the FLSA, because there's nothing that's been said that there's any preemption. So if we were to say, okay, there needs to be preemption, no one has ever said there's FLSA preemption. Do we need to get, and do you want us to get to making a statement such as you're making that there is absolutely no incompatibility between the opt-in and the opt-out of Bill 23 class actions? Yes, Your Honor. Would you pull the microphone a little closer to you? I'm not sure if it's working, actually. Is that better? I don't think it's working, but speak a little more loudly. Okay, having difficulty with it. It's not that we're that far away, but a couple of words are getting lost here and there, so it's not your fault. In response to Your Honor's question, we would urge the court to make a broader rule beyond just the case for the class action benefit jurisdiction, because to clear up this misunderstanding and mistaken belief that Section 16B of the Benefits and Benefits Act is somehow incompatible with Bill 23 opt-out state wage law class actions, and we think it's important that that rule be clarified whether the cases are brought separately under Catholic jurisdiction or in federal court under supplemental jurisdiction, or whether there's a question about certifying a Will 23 class. All right, and what is your argument in that regard, that they're not incompatible? Our argument is primarily, as Appellant's counsel said, based on the text of Section 16B of the Fair Labor Standards Act, which by its terms, a requirement for ways to provide written consent and opt-in, applies only to claims brought under the Fair Labor Standards Act, minimum wage, overtime, and anti-retaliation. Section 16B says nothing about state wage claims, and as this court has noted, the clearest indicator of congressional intent are the words that Congress chooses. Congress said nothing about state wage claims in Section 16B, and in the Second Circuit decision in Smith and Walensky and the Seventh Circuit decision in Urban, those courts really grounded their analysis in the plain text of Section 16B in finding that it's not incompatible with opt-out class action. What about the savings cost, the provision that says nothing herein shall prohibit a state from providing greater benefits? Would we infer from that that you need to look and see whether the benefits are indeed better and permit those actions to go forward, but if the benefits are the same or not as good, that they would be barred? I know no one else has said that, but when I read it, it was curious to me. Are we supposed to analyze exactly what the state's giving and say, well, you know, if it's better, then that's okay, but if not, it's not? No, Your Honor, we certainly wouldn't advocate for that kind of narrow view of the savings clause. We think that in these cases, the savings clause stands for the idea that Congress said states can regulate employees' wages and hours just as the federal law can, and that these state schemes and federal schemes can coexist, and that the existence of the savings clause is an indication that state wage law class actions can proceed alongside or at the same time as any federal fair labor status act collective action, that these are two schemes that are allowed to proceed together, separately, and that employees should be allowed to bring wage claims both under the fair labor status act and under state wage claims. Do you know of any case that said that? Because it's just curious to me that that savings clause doesn't say can provide separate and independent remedies as compared to better, provide better, you know, greater rights. I don't know of a certain case that said that you can only read the savings clause to apply to greater protection. Well, I was going to say, where it says to the contrary that greater isn't a limiting phrase. I know that Judge Croft's case in Epstein, it's a district court case, said specifically that just because the savings clause says that there are greater protections, there's no reason to believe that there are, it doesn't apply to parallel or equal protections. That's what I was looking for. What was that case? It's Epstein-Sheen. Oh, okay. It's cited by an appellant in their brief. What, if I'm understanding you correctly, it sounds to me like you would like us to take another look at the essential and the supplemental jurisdiction area as well. Am I correct about that? Your Honor, I would agree with Appellant's counsel that de essentio does not need to be revisited in order to rule in this case that there's no inherent incompatibility between Section 16B and Rule 23 opt-out wage clause sections. However, in light of the confusion that ensued in the district courts and the Third Circuit in particular after de essentio, we do feel it would be helpful to clarify that some of the statements in de essentio regarding perhaps that there was a choice of an opt-in for wage cases, that that be clarified that that's really only for the federal action. It's not a choice for all wage claims proceeding in federal court. And that the idea that Section 16B somehow rejects opt-out class actions, that those who would respectfully submit, it would be helpful if those points were clarified in de essentio. And if the court were to go further and address supplemental jurisdiction to foreclose, for example, the idea that some kind of difference between an opt-in action and an opt-out action could be a basis to decline supplemental jurisdiction under 1367C4, that would be helpful to clarify that that is not an option, as well as this predomination of claims that, as the other circuits have noted, that Chalmer mentioned in de essentio, that predomination under 1367 primarily goes to the type of claim, not the number of claimants, and that that's the proper way to analyze predomination in these cases. Could you remind me of the background for the opt-in? As I recall, there was a proliferation of litigation, and so the opt-in was to make sure that people, to limit the litigation or make sure that people really did want to proceed under FLSA. Yes. And it was obviously before Rule 23, so it was a long time ago. It was, yeah. The FLSA has originally enacted a lot of ways to bring FLSA claims on their own and on behalf of others similarly situated and to designate an agent. Oh, that's right. And that's where we get the idea of the representative suit. And after initial Supreme Court interpretations of the Fair Labor Standards Act that were quite broad, such as Matt Clemens, Anderson v. Matt Clemens, in 1947, Congress wanted to limit what it saw as this onslaught of litigation, and some of that concern was for third parties who didn't have an interest in the case, such as unions bringing cases on behalf of employees, to be able to come into court. And as Your Honor, Judge Shirouka noted in the Sinze v. Jensen's health care case, that eliminating that agency suit was the impetus of the 1947 Parole to Parole Act amendments to 16b. So removing that third party, but still allowing employees to bring cases on behalf of other similarly situated employees. But we didn't have Rule 23 then. No, and the opt-in provision really brought the FLSA into conformity with the prevailing practice at the time. The modern version of the opt-out procedures that we're discussing here today in Rule 23 didn't come into effect until 1966. But they did not come into effect, but as a matter of practice, there was some experience in certain courts and with certain district judges of permitting opt-outs. So the 1966 amendment wasn't the first time anyone ever heard of opt-outs before. Your Honor, it's my understanding that the majority of FLSA cases at the time were litigated with, whether it was called an opt-in, it was that those... Experienced. I'm sorry? Experienced class actions. Experienced class actions, right. Where those that would be held to the judgment were those that actually filed something with the court. Right. And again, the legislative history also seems to make a distinction between representative class actions or representative actions and collective actions. And the statute was trying to... Or the amendment was trying to eliminate the representative class action where the union agent would be the one who would bring the action, but not necessarily where the plaintiffs were all the workers that were affected. Exactly, Your Honor. That's the intent of the Enforcement of Proact Amendment. Anything else? Anything else you want to tell us? We strongly encourage the court to clarify, as the 2nd, 7th, 9th, and D.C. circuits have, that Section 16B of the Fair Labor Standards Act is not incompatible with an opt-out state wage class action. Thank you. Thank you very much, Mr. Brady. Good morning. Good morning. May it please the court, my name is Patrick G. Brady. I'm with the law firm of Epstein, Becker & Green. We represent the appellees in this matter. Good. Great. Please raise this just a little bit. A little bit? Yeah, that's great. Okay. Mr. Brady, could I begin by asking you the same question I asked Mr. Weinberg, and that is simply, can you shed any light on the origin of the doctrine of inherent incompatibility? Yes, but this will not be back to Genesis. The way I read the cases, and I must tell you, I think the DiCenzio case is a springboard for many of the inherent incompatibility cases. And the reason is as follows. In DiCenzio, the court examined to a degree the legislative history of Section 216B. The court noted that Congress's mandate in Section 216B, that an individual must opt into the case, characterized that congressional mandate as a crucial policy decision, not a procedural, but perhaps substantive. And the substantive part of it is as follows. When 216B was enacted, it was, as Judge Randall asked a few moments ago, it was in reaction to a tsunami, so to speak, of litigation involving minimum wage and overtime cases. And what the Congress was attempting to do was to control the volume of these types of cases, and, and this is critical, and to make certain that the individuals whose rights were being litigated, that they knew that their rights were being litigated, and they consented to it. And that is the essence of what this inherent incompatibility doctrine is. Because, I'm sorry. Sensei, but there is then a later policy decision that wasn't really implicated in DiCenzio, because it was a supplemental jurisdiction case. The later policy decision being Rule 23 and CAFA. So the statement in DiCenzio that it was a policy decision in 16B is not wrong. It's just when you look at it under the fact pattern that we have here, and given Rule 23, there are other policy decisions that coexist. That's true, but I think they have to be reconciled rather than simply evaded. And let me focus on really the narrow scope of Judge Jones's decision. This decision, or these decisions, is not some per se rule, that you cannot have Rule 23 in Section 216B cases given. What Judge Jones was focusing on, and it really goes back to the heart of why we have the opt-in provision, is that you have in Rule 23 cases, and the Maryland case and the Ohio case, basically mimic the FLSA in terms of the executive exemption. Basically, but there certainly is different language in these two state statutes, right? No, Your Honor. If you look at the statutes and the implementing regulations, they simply refer to the FLSA and the Department of Labor's implementing regulations. They follow exactly what the Department of Labor does. And so the issue here is this. In the Middle District of Pennsylvania, we have Knepper, we have Fisher, and we have Craig. Craig is the FLSA case. It is a nationwide FLSA case challenging the classification of assistant store managers under the executive exemption. Knepper and Fisher challenged the same classification under Maryland law and under Ohio law. Individuals who made a decision, whether by act or omission, not to opt-in to the federal case, the Craig case, will have their FLSA rights in effect adjudicated in these state wage and hour cases. Because an adjudication under the Maryland law that, for example, there was a misclassification or there wasn't a misclassification. But they can opt-out. Well, only on the B-3, not on the B-2. There's a B-2 component to each of these cases. And that's what the court is concerned about. Congress had a concern that individuals should not have their rights adjudicated unless they consent to do it. And this is exactly what's going on here. This is, as DiCenzio says, an end-run around the FLSA opt-in procedure. But under what theory do you then say, is incompatibility correct? I mean, there is no theory that would enable us to say you can't have jurisdiction. There's no preemption here. It's not an incompatibility. It's that, oh, well, maybe this is not exactly what Congress intended. I'll leave for a moment the preemption issue, because I do want to return to that for a moment. But to answer your question, what I think the district courts are trying to do is to reconcile what Congress wanted done with respect to individual consent to have FLSA claims adjudicated. When there is a companion case that will, in effect, adjudicate those cases in state law clothing, it's an FLSA case dressed up in state law clothing. Well, then Congress should amend the FLSA to say, and we meant, only when the rights are different under state law can they be pursued. If they're the same, then it's incompatible. Well, you could. That's one approach. But the other approach is to say, can you look at the text of 216B and 218 and also inferentially determine that these types of actions cannot exist? What if we said, following up on Judge Randolph's question, what if we said the doctrine of inherent incompatibility is made up of whole cloth? It no longer exists. Now, under what principle or principles of law would you support the decision of Judge Jones in these two cases? Well, if you're telling me I should abandon the argument at this point on inherent incompatibility. Well, I'm just hypothetically asking you. If we reach that conclusion, I mean, I assume that your answer would be it's not over in that case. Here is the principle or here are the principles that ought to warrant the result that Judge Jones reached. Well, although Judge Jones in the Knepper case refused to apply preemption to that case and declined to address it in the Fisher case, we have brought to the court's attention a lot of cases, starting with the Fourth Circuit and district courts within the Fourth Circuit, dealing with the question of preemption. And it really parallels exactly what I'm saying. In the Fourth Circuit case and in the district court cases within the Fourth Circuit, interpreting either common law claims or statutory claims, have concluded that if you are attempting to, in effect, vindicate your FLSA rights through common law or state statutes which simply provide the same type of benefit, that's preempted because what 218A provides is Congress says that you can view the states, may enact higher minimum wages or lower maximum work weeks. That's what Congress said you're allowed to do. And with the Fourth Circuit is saying, well, okay, but the statutes that are in front of me are grounded in the FLSA. And so that is not an exercise of the right reserved to the states to enact greater protection. So the district court would have to analyze the state laws presented, and if they don't provide greater benefits, then they wouldn't permit the state case to go forward? Your Honor, the district court will have to analyze the state law claims under any circumstances. As a threshold matter. As a threshold matter. As a threshold matter. To decide whether there's even jurisdiction. Yes, yes. The question the judge has posed, that's conclusion, isn't it? In analyzing the statutes and determining whether or not there are greater benefits provided under a state statute to that provided under FLSA. I mean, that's analysis that's employed with respect to issues in conclusion. Yes, exactly. But that was the answer to your question, Your Honor. If we put inherent incompatibility to the side for a moment, what other ways could we address this problem? And I should add, there's been a lot of discussion this morning about some of the other circuit decisions. Irvin, you try to distinguish Irvin, don't you? I thought it was just flat out wrong to side with him. No, Irvin is quite distinguishable in terms of what the issue is here before the court. Irvin says nothing in the text of the FLSA or the procedures established by the statute suggests either that the FLSA was intended generally to oust other ordinary procedures used in federal court or that class actions in particular could not be combined with an FLSA proceeding. That scuttles your position. No, Your Honor, because for the following reasons, that statement is dicta. And here's why. The Illinois statutes that are in play provide greater protections than the FLSA. And that decision never analyzed the question of whether or not, let me just step back for a moment. What we're saying is that Judge Jones' decision applies to those circumstances where the parallel Rule 23 case involves state laws that essentially mimic the FLSA. However, if I were here before you today on the Irvin case, the argument that I would be making to you is that Irvin is distinguishable because the Illinois statutes that are in play, that is the cash wage and some of the other provisions, actually provided greater protection to the individuals than the FLSA. And we don't have a problem with that because we don't have this problem of individual rights being adjudicated in state law that really are FLSA crimes. And that's the same issue in the Second Circuit Smith and Walensky case. Because in that case, the New York statute, there was a spread of hours provision which has no counterpart under the FLSA. And in addition to that, the cash wage payment under the New York statute provides greater benefits than the FLSA. We're saying, in effect, Your Honor, that individuals were given an opportunity to opt in to a Fair Labor Standards Act to have their FLSA rights adjudicated. For whatever reason, many of them did not do that. The effect of these cases, Knepper and Fisher, is to dress up an FLSA claim in state law clothing and have the rights of the individuals adjudicated when they had already made a decision not to have those same rights adjudicated. That's what the inherent incompatibility is, trying to reconcile what 216B is supposed to do, a substantive provision, and Rule 23, which is a procedural decision. Although you're giving a lot of heft to the congressional intent regarding the opt-in, it was the practice of the day. And again, I say, if Congress really did care about that, wouldn't they, in enacting CAFA, or in connection with Rule 23, or amending FLSA, wouldn't they let us know today that that really matters, that opt-in, that was the policy then, continues to be something we really, really care about? Well, the only way I can answer your question, Your Honor, is to say that the opt-in provision was established in 1947. Since then, there have been a number of significant changes in the law with respect to how aggregate claims may proceed, which is we now have Rule 23. And there's been a lot of time for them to do something about this. What I would suggest to you, Your Honor, is the fact that there is inaction suggests that Congress still believes that the opt-in provision is one that is substantive and needs to be recognized and deferential. Are you familiar with the recent Supreme Court decision in Shady Grove that happened in 2010 that dealt with interaction between Rule 23 in the federal context and certain state law? Not really, Your Honor. I'm not going to try and pretend that I do. My question is whether it might have changed the landscape in the way that we should be looking at these kinds of questions. The only way I can answer that question, Your Honor, is simply this. I know many times when the Supreme Court is articulating a decision that may have ramifications beyond the now issues before it, oftentimes it will address some of those other issues in a footnote. Now, given the fact that the Sterling case, Sterling, I think, versus Hoffman-LaRoche, which is a Supreme Court decision, it was in that decision where the Supreme Court indicated or identified what the two policy considerations were when 216B was enacted, which was to say to reduce the volume of minimum wage and overtime cases and at the same time to increase each individual's knowledge and involvement in the action. To make certain that no one's rights were being litigated without their knowledge and consent. And so that's a fairly substantive provision. And I just don't think, I understand completely Judge Randall's position that you would think that somebody would have thought of that. It's not a position. You would think that someone would know the policy considerations behind 216B when you have these later iterations of Rule 23. But then in Congressional inaction these days, we really don't take this meaning. Yes, I would just say it just means that nothing happened. I thank you for your time. I have nothing further unless there's questions from the court. Are there any other questions? Thank you. Thank you very much, Mr. Brady. Thank you. I just want to address a couple points, one of which was raised by Judge Randall to Department of Labor's counsel. This issue of whether the fact that the savings clause only explicitly references greater protections. And that seems to be your colleague's key argument right now. Yes, and Your Honor, I would just want to direct the court to two cases. The Wayne versus Chinese newspaper case, which was a preemption case. In that case, the California statute literally adopted the substantive standards of the Fair Labor Standards Act. And in fact, if we look at the Ninth Circuit's holding in that case, the circuit writes, we therefore hold that FLSA does not preempt a state law section 17-200 claim that borrows its substantive standard from the FLSA. So Wayne really is directly contrary to the position. So we have the persuasive Ninth Circuit. Right. And we also have, Your Honor, the Second Circuit in the Scherer decision, the recent Scherer versus Smith and Walensky decision. Some of the state law, New York labor law claims in that case exactly mirror the Fair Labor Standards Act claims. And in fact, at page 241 of the Second Circuit's decision, they wrote the following. Thus, 29 U.S.C. section 203-N and section 196-D bar the same types of tipping practices and actions that violate the tip pooling provision of 29 U.S.C. 203-N that also violate section 196-D. 196-D, of course, is a reference to the New York labor law. So as a matter of fact, Your Honor, in Scherer, there were parallel state and FLSA substantive provisions. And that didn't bother the Second Circuit one bit. You know, there's a lot of Fair Labor, there's a lot of overtime litigation that this court never sees. And that's because the Philadelphia Community Legal Services and organizations like that are filing Pennsylvania Minimum Wage Act overtime cases in the Philadelphia Municipal Court. And many of those cases concern violations that were the substantive violation. This statute runs parallel to the FLSA. I think it would be a radical hold in the deed for this court to hold that those claims are preempted by the FLSA and to move all of these individual overtime rates cases into the federal system. You make an interesting point. So that and that wouldn't be limited to holding along those lines wouldn't be limited to a class action situation. It would, a preemption. What Rite Aid is fundamentally saying when they get into the preemption argument, it's very hard to carve the preemption argument out so it's only dealing with class actions. If the logic is that the savings clause is the impetus for the preemption analysis, then you're not just preempting the ability to bring a state law class action claim. You're preempting, you need to be ready to preempt the underlying state law itself. And that would be something that no court has ever come close to and many courts have refused to do that. Well in that sense the inherent incompatibility doctrine is much more narrow than the preemption. It is because inherent compatibility is only operating with respect to section 216B of the FLSA, which is the collective action device. Thank you very much. The case was very well briefed, very well argued. We'd like to have a transcript, ma'am.